IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNIVERSAL CITY STUDIOS LLC,<br><br>        Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>        Defendants. | Case No. 25-cv-04527 |

## COMPLAINT

Plaintiff Universal City Studios LLC ("Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademarks and/or unauthorized copies of Plaintiff's federally registered copyrighted works to residents of Illinois (collectively, the "Unauthorized Products"). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling Unauthorized Products. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of its registered copyrighted works, as well as to protect unknowing consumers from purchasing Unauthorized Products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks and

infringement of its copyrighted works as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4. Plaintiff Universal City Studios LLC is an American film production and distribution company, and is a division of NBCUniversal, one of the world's leading media and entertainment companies.

5. Plaintiff's most successful film franchises include the Despicable Me and Fast & Furious franchises, and their library also includes individual films such as Jaws and E.T. (collectively, the "Universal Films").

6. Products sold under the Universal brand and associated with the Universal Films include items such as apparel, accessories, appliances, bedding, books, toys, food and beverages, and souvenirs (collectively, the "Universal Products"). Universal Products are distributed and sold to consumers throughout the United States, including in Illinois, through authorized retailers and websites, such as Walmart, Target, and Hot Topic, and the official shop.universalorlando.com website and Plaintiff's Amazon store.

7. The Despicable Me franchise began in 2010 with the film *Despicable Me*, which was followed by three sequels, *Despicable Me 2* (2013), *Despicable Me 3* (2017), and *Despicable Me 4* (2024), and by two spin-off prequels, *Minions* (2015) and *Minions: The Rise of Gru* (2022). It is the highest-grossing animated film franchise, with over $5.6 billion grossed worldwide. The protagonist of the Despicable Me franchise is Gru, who is the adoptive father of three little girls and the boss of the Minions. Minions perpetually serve the most despicable masters of the time. Some of the characters and character names made famous by the Despicable Me franchise include:



8. Copyrighted works associated with the Despicable Me franchise are registered with the United States Copyright Office. The registrations include but are not limited to: "Despicable Me" (Reg. No. PA0001685728), "Despicable Me 2" (Reg. No. PA0001859348), "Despicable Me 3" (Reg. No. PA0002043544), "Despicable Me 4" (Reg. No. PA0002478457), "Minions" (Reg. No. PA0001952355), and "Minions: The Rise of Gru" (PA0002369070). Plaintiff has also registered the following marks with the United States Patent and Trademark Office:

| Registration Number | Trademark |
|---|---|
| 4,522,438 | DESPICABLE ME |
| 4,522,437 | |
| 4,419,214 | |
| 4,515,131 | |
| 4,605,902 | |
| 4,354,512 | |
| 6,169,993 | IT'S SO FLUFFY |
| 6,456,114 | |
| 4,918,817 | MINIONS |
| 5,059,956 | |
| 4,846,779 | |
| 5,176,741 | |

4

| | |
|---|---|
| 5,166,771<br>5,129,447<br>5,055,079<br>5,129,446 | DESPICABLE ME MINION MADE |
| 4,592,054<br>4,592,051<br>4,592,052<br>4,596,147 | |

9. The Fast & Furious franchise is centered on a series of action films that depicts a world of street racing, heists, and spies. The first film, *The Fast and The Furious*, was released in 2001. Since then, nine more movies have been released, and the series has become Plaintiff's biggest franchise and the eighth highest-grossing film series of all time, with a combined gross revenue of over $7 billion worldwide. The franchise universe expanded with the six-season animated television series *Fast & Furious Spy Racers*, which premiered in 2019. Plaintiff has used the famous Fast & Furious name for many years and has registered the following marks with the United States Patent and Trademark Office:

| Registration Number | Trademark |
|---|---|
| 2,854,465 | THE FAST AND THE FURIOUS |
| 5,276,717<br>5,697,522<br>5,428,676<br>5,546,145<br>5,428,677 | FAST & FURIOUS |
| 6,069,963<br>6,731,983<br>6,731,984<br>6,731,985 | FAST & FURIOUS SPY RACERS |

10. Jaws is a franchise series that started with a thriller film directed by Steven Spielberg and released in the summer of 1975. The first film follows a police chief, a marine biologist, and a fisherman set out to hunt and kill a great white shark that is terrorizing a small beach town of Amity Island and killing several of its residents. The first film was a box-office success and won several awards for its ingenious production and memorable soundtrack, including the Academy Awards for Best Film Editing, Best Original Dramatic Score, and Best Sound. The first film was followed by three sequels: Jaws 2, Jaws 3-D, and Jaws: The Revenge. Plaintiff has used the famous Jaws name for many years and has registered the following marks with the United States Patent and Trademark Office:

| Registration Number | Trademark |
|---|---|
| 1,100,741 2,276,097 2,316,903 6,791,161 7,139,772 7,426,341 | JAWS |
| 6,294,711 6,294,707 | YOU'RE GONNA NEED A BIGGER BOAT |
| 1,075,059 | JAWS (logo) |
| 1,073,671 | JAWS (shark logo) |

11. E.T. the Extra-Terrestrial (or E.T. for short) is a 1982 science fiction film. It follows the story of an alien that befriends ten-year-old Elliott Taylor and is stranded on Earth. The film was produced and directed by Steven Spielberg and won several Academy Awards, including Best

6

Original Score and Best Visual Effects. Plaintiff has used the E.T. name for many years and has registered the following marks with the United States Patent and Trademark Office:

| Registration Number | Trademark |
|---|---|
| 1,314,299 | E.T. |
| 1,390,935 | |
| 2,772,224 | |
| 1,312,269 | E.T. THE EXTRA-TERRESTRIAL |
| 1,346,436 | |

12. True and correct copies of the United States Registration Certificates for the trademarks associated with the Universal Films and listed in the tables above (collectively, the "Universal Trademarks") are attached hereto as **Exhibit 1**.

13. The U.S. registrations for the Universal Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the Universal Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the Universal Trademarks pursuant to 15 U.S.C. § 1057(b).

14. The Universal Trademarks are distinctive when applied to the Universal Products, signifying to the consumers that the products originate from Plaintiff and are manufactured to Plaintiff's high-quality standards. Whether Plaintiff manufactures the products itself or licenses others to do so, Plaintiff has ensured that products bearing its trademarks are manufactured to the highest quality standards.

15. The Universal Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1) and have been continuously used and never abandoned. The innovative marketing and product designs of the Universal Products have enabled the Universal brand to achieve widespread recognition and fame and have made the Universal Trademarks some of the most well-known marks in the entertainment industries. The widespread fame, outstanding reputation, and

significant goodwill associated with the Universal Films have made the Universal Trademarks invaluable assets of Plaintiff.

16. Plaintiff has expended substantial time, money and other resources in advertising and promoting the Universal Trademarks. In fact, Plaintiff has expended millions of dollars in advertising, promoting, and marketing featuring the Universal Trademarks. Universal Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the Universal Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiff. Universal Products have become among the most popular of their kind in the U.S. and the world. The Universal Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the Universal Trademarks is of incalculable and inestimable value to Plaintiff.

17. True and correct copies of the United States Registration Certificates for the copyrights associated with the Universal Films and listed above (collectively, the "Universal Copyrighted Works") are attached hereto as **Exhibit 2**.

18. Among the exclusive rights granted to Plaintiff under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Universal Copyrighted Works to the public.

19. Since first publication, the Universal Copyrighted Works have been used on the Universal Products and are currently featured on Plaintiff's website at shop.universalorlando.com. Universal Products featuring the Universal Copyrighted Works are advertised on Plaintiff's website at shop.universalorlando.com and on Plaintiff's Amazon store.

**The Defendants**

20. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. Upon information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

21. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to discover Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

22. The success of Plaintiff's brand has resulted in significant counterfeiting of the Universal Trademarks and copying of the Universal Copyrighted Works. In recent years, Plaintiff has identified many fully interactive, e-commerce stores offering Unauthorized Products on online marketplace platforms, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a U.S. Customs and Border Protection (CBP) report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights (IPR) violations totaling over $3.3 billion, an

increase of $2.0 billion from 2020.[2] Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), most of which originated from China and Hong Kong.[3]

23. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

24. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from

---

[2] *See Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border Protection.
[3] *Id*.
[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.
[5] *Id.* at p. 22.
[6] *Id.* at p. 39.
[7] Chow, *supra* note 4, at p. 186-87.

U.S. bank accounts and, on information and belief, have sold Unauthorized Products to residents of Illinois.

25.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use any of its Universal Trademarks or copy or redistribute the Universal Copyrighted Works, and none of the Defendants are authorized retailers of genuine Universal Products.

26.     Many Defendants also deceive unknowing consumers by using the Universal Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Universal Products. Other e-commerce stores operating under the Seller Aliases omit using Universal Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Universal Products.

27.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete

information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

28. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

29. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

30. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

31. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

32. Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the Universal Trademarks and/or copies of the Universal Copyrighted Works in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

33. Defendants' unauthorized use of the Universal Trademarks and/or copies of the Universal Copyrighted Works in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

34. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

35. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Universal Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Universal Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Universal Products offered, sold, or marketed under the Universal Trademarks.

36. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Universal Trademarks without Plaintiff's permission.

37. Plaintiff is the exclusive owner of the Universal Trademarks. The United States Registrations for the Universal Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the Universal Trademarks and are willfully infringing and intentionally using counterfeits of the Universal Trademarks. Defendants' willful, intentional, and unauthorized use of the Universal Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

38. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

39. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known Universal Trademarks.

14

40. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

41. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

42. Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Unauthorized Products by Plaintiff.

43. By using the Universal Trademarks on the Unauthorized Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

44. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

45. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III
## COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATIONS (17 U.S.C. §§ 106 AND 501)

46. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

47. The Universal Copyrighted Works constitute original works and copyrightable subject matters pursuant to the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

48. Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for the Universal Copyrighted Works. The Universal Copyrighted Works are protected by the U.S. Copyright Registration Nos. PA0001685728, PA0001859348, PA0002043544, PA0002478457, PA0001952355, and PA0002369070, which were duly issued to Plaintiff by the United States Copyright Office. At all relevant times, Plaintiff has been and still is the owner of all rights, title, and interest in the Universal Copyrighted Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

49. The Universal Copyrighted Works is published on the internet and available to Defendants online. As such, Defendants had access to the Universal Copyrighted Works via the internet.

50. Without authorization from Plaintiff or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced, and/or made derivate works incorporating the Universal Copyrighted Works on e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized Products. Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Universal Copyrighted Works. Such conduct infringes and continues to infringe the Universal Copyrighted Works in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

51. Defendants reap the benefits of the unauthorized copying and distribution of the Universal Copyrighted Works in the form of revenue and other profits that are driven by the sale of Unauthorized Products.

52. Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating Unauthorized Products that capture the total concept and feel of the Universal Copyrighted Works.

53. On information and belief, Defendants' infringement has been willful, intentional, purposeful, in disregard of, and with indifference to Plaintiff's rights.

54. Defendants, by their actions, have damaged Plaintiff in an amount to be determined at trial.

55. Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a preliminary and permanent injunction prohibiting further infringement of the Universal Copyrighted Works.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the Universal Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Universal Product or is not authorized by Plaintiff to be sold in connection with the Universal Trademarks;

b. reproducing, distributing copies of, making derivative works of, or publicly displaying the Universal Copyrighted Works in any manner without the express authorization of Plaintiff;

c. passing off, inducing, or enabling others to sell or pass off any product as a genuine Universal Product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Universal Trademarks and/or the Universal Copyrighted Works;

d. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

e. further infringing the Universal Trademarks and/or the Universal Copyrighted Works, and damaging Plaintiff's goodwill; and

f. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the Universal Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof and/or which bear the Universal Copyrighted Works;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction including, without limitation, any online marketplace platforms such as Amazon, PayPal, and Temu (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit

and infringing goods using the Universal Trademarks and/or the Universal Copyrighted Works;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Universal Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Universal Trademarks;

5) As a direct and proximate result of Defendants' infringement of the Universal Copyrighted Works, Plaintiff is entitled to damages as well as Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6) Alternatively, and at Plaintiff's election prior to any final judgment being entered, Plaintiff is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

7) Plaintiff is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 17 U.S.C. § 1117(a); and

8) Award any and all other relief that this Court deems just and proper.

Dated this 25th day of April 2025.	Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Berel Y. Lakovitsky
Luana Faria de Souza
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
blakovitsky@gbc.law
lfaria@gbc.law

*Counsel for Plaintiff Universal City Studios LLC*